Go ahead, Counselor. Good morning, Your Honors. May it please the Court. My name is John Echevarria, and I represent the appellant, Xavier Becerra, the Attorney General of California. I'd like to reserve three minutes of my time for rebuttal. For the past ten months, law enforcement agencies within the state of California have been prevented from enforcing California's ban on the possession of large-capacity magazines, which are defined by statute as firearm magazines capable of holding more than ten rounds of ammunition. Let me ask you a question, which is somewhat important to me. I understand that last Friday summary judgment arguments were made in this case? It was last Thursday, Your Honor. Last Thursday? That's correct. So what is the status then? Summary judgment is not under submission or advisement yet, Your Honor. The district court held a hearing for about four hours of argument on the plaintiff's motion for a summary judgment, and at the conclusion of the hearing, the Court ordered supplemental briefing. So supplemental briefing devoted solely to the Second Amendment claim will be due on June 11th, and then a simultaneous response will be due ten days thereafter. And it's my understanding that the Court will then take the matter under submission. And there's also a hearing in September set dealing with the trial itself. That is correct. That's the final pretrial conference before the judge gives it. Well, I must compliment counsel on both sides. We've finally paid attention to cases we've been trying to get across to you for the last 30 years to let this preliminary thing really mean preliminary and get ready for the main act. But having said that, it seems to me that I just don't know why the government is appealing here. We're going to have an entirely different standard of review for a preliminary injunction that you — that will be not favorable to the government. The state will be much better off after the trial. So is there some reason — this doesn't have anything to do with the case, but I don't understand why you're pursuing it, because you're going to have that one arm tied behind you today, which you won't have, perhaps, if you lose it next time around. Yeah. I understand that, Your Honor. The state does have very strong grounds in challenging the preliminary injunction. Even though it's an interlocutory appeal, the district court did abuse its discretion in finding that — Okay. But you understand, at best, we can't give you an answer of what the law will be after the permanent injunction issue. Yeah. We're not asking for the Court's advisory opinion on what the law should be ultimately. We want to make sure counsel understand that it is only advisory and it will have nothing to do with the case that we ultimately see on the permanent. But if the Court does reverse the order on the preliminary injunction on a finding that the district court did not correctly apply intermediate scrutiny, which is the Attorney General's position, that then actually — that actually could provide guidance to the district court as the case proceeds through the merit stage. I would also like to note that — But just a minute. Yes, Your Honor. It's my understanding that when we got this case, that what happened was that the district court said right up front that I'm not ruling on the merits. I'm just — it may change as the record develops. It may well be that they're on a more robust — and I'm trying to read — evidentiary showing made after greater time and testimony is taken that the state will be able to establish a reasonable fit, but not yet. So it seemed to me that what the district court was saying there was this is just what the district court was saying? The district court did say that, but in the preliminary — And in effect, then my only questions I have in front of me are, did the district court apply the correct law, which I don't find any big problem about that. The law, I think, is correct. And were the findings of fact and its application of those findings of fact correct legal standard, illogical, implausible, or without support? In other words, an abuse of discretion. So I'm at an abuse of discretion basis here. Because the law was adequately set out. Nobody seems to argue that. So again, we're back to Judge Wallace's question. Why is it the state is so anxious when the trial is coming in September? The summary judgment could be here in two months. This case could last two months, and yet it's important for us to do it? It is important for the court to intervene at this stage, Your Honor. Even though the district court said that the court's view may change in light of the evidence at trial or on summary judgment, much of the same evidence has been presented on the merits in opposing the plaintiff's motion for summary judgment. And that is because the evidence that was submitted in opposition to the motion for a preliminary injunction and in opposition to the plaintiff's motion for summary judgment is substantially the same evidence that was submitted in the FIOC v. Sunnyvale case, that this Court held as a matter of law is precisely the type of evidence that the State can rely upon in substantiating its important government interests and also in demonstrating a reasonable fit. It's the same evidence. And at the preliminary injunction stage, the district court ignored large swaths of the evidence submitted by the Attorney General, and that was an abusive discretion. Instead, the district court focused on one empirical study, which was an empirical study also submitted in the FIOC case, and that was the Mayors Against Illegal Guns study, which showed that when large-capacity magazines are used in a public mass shooting, they result in a 151 percent increase in injuries and a 63 percent increase in the number of fatalities. And the district court is, even though the district court stated that it was applying intermediate scrutiny, in actuality it was not. It was subjecting California's statute, the people's statute, to something more akin to strict of one empirical study. And in dissecting that study, the Court did commit error. It assumed that all the public mass shootings in which magazine capacity was unknown did not involve large-capacity magazines. And that's not a reasonable assumption, especially where the plaintiffs have submitted evidence that many standard handguns are sold with large-capacity magazines. And if those firearms were used in a public mass shooting, it's unreasonable to assume that a large-capacity magazine just was not used. In trying to set aside a prior case, it seemed to me to be pretty persuasive against the plaintiffs, not against you, against the other side. The judge says, well, maybe their record was different from ours. I thought that was a very — I didn't understand what he was saying. What was the difference that he depended upon? It was also perplexing to the Attorney General, Your Honor. I'm sure. The evidence was substantially similar. If anything, the evidence since the FIOC decision in 2015 shows that large-capacity magazines are extremely dangerous. And the evidence that was submitted by the Attorney General in this case shows that there's even a more compelling reason now to ban the possession of large-capacity magazines. So your position is that the district court was wrong in trying to get rid of FIOC just by saying my record is different. In comparing the two records, they made an abuse of discretion. That is absolutely correct, Your Honor. That's your position. The district court made a — I guess it would be a factual error to conclude that the two records were different. He stated that the record before him in this case was not on point, not reliable, even though under intermediate scrutiny the government can rely on any evidence reasonably believed to be relevant to the issue. And then he said in FIOC it was on point and it was relevant. The State submitted much of the same evidence that was submitted in FIOC, including the declaration of Dr. Christopher Coper. We actually submitted the declaration from the FIOC action in which Dr. Coper explained how the Federal — the Federal assault weapons ban, which was in place from 1994 to 2004, was hampered because it didn't have a ban on possession. It was actually less effective than California's existing ban because individuals could transfer grandfathered large-capacity magazines under the Federal ban. And Dr. Coper concluded that Sunnyvale's municipal ordinance, which closes the possession loophole, increases the likelihood that large-capacity magazines will be removed from circulation and that the number of large-capacity magazines used in the killing of law enforcement and in public mass shootings will be reduced. And that — And did the district judge make an analysis when he decided that the FIOT case didn't apply because it must have been a different record? You're arguing the record was not only the same, it's better before the current district judge. Did he make an analysis of the record? No. There was no side-by-side comparison of the evidence. I didn't find it either. I read his opinion as carefully as I could. It seems to me that when we make a statement in our court, we would expect more in distinguishing the case. And I take it that that's a flaw that you find in your — in your approach to this case. Absolutely. It's one of the most glaring flaws, in my opinion, with the Court's order, because this Court held as a matter of law that the type of evidence that we submitted in this case and the type of evidence that was submitted in FIOC is precisely the type of evidence that this State can rely upon. Okay. Well, I will let the other side tell you — tell us why you're wrong, then. I look forward to the opportunity to hear that, Your Honor. But I'd also like to know — The honest truth is, and the reason that I wanted to get to my questions, and I appreciate Judge Wallace's questions, it seems to me we've got the law as set, and the district court is applying the law, but nobody's arguing on any one of these issues that the wrong law was applied. In fact, if we go back through, the district court has applied the same law that I would have applied in these kind of similar cases, and he gets down through — he goes through each one of the steps, applying the law that needs to be applied. It just seems to me that what you're suggesting is that when we finally get down to whether we're going to try strict scrutiny or intermediate scrutiny or otherwise, that you think you'd come out in a different way than he would or did under an intermediate scrutiny analysis. And I'm with you, except that it's all on abuse of discretion. There could be no evidence, totally illogical, implausible, what the district court did. And we're on preliminary injunction. I understand Your Honor's concern, but as I was just discussing with Judge Wallace, there is an illogic that is fundamentally tainting this Court's order by ignoring the Attorney General's evidence. And even though the Court did eventually come around to begrudgingly accept that this Court in FIOC determined that intermediate scrutiny applies, it didn't actually apply intermediate scrutiny. It applied something closer to strict scrutiny. No deference to the predictive judgment of the people of California in enacting Proposition 63 was given. Instead, the district court started with the proposition that California's possession ban is presumptively unconstitutional. That's not the starting point under intermediate scrutiny. The district court also reweighed the evidence, which under intermediate scrutiny the district court is not entitled to do, so long as the State has presented facially plausible evidence and rational inferences from that evidence. So even though the Court did say that it was applying intermediate scrutiny, it was not. It was applying something much higher. If you look at how the Court was examining the Mayors Against Illegal Gun Study, you can see how the Court was not applying intermediate scrutiny. The Court was effectively requiring the Attorney General to present evidence of grandfathered large-capacity magazines. Those would be magazines that were owned before the year 2000, before the original restrictions went into place, that the Attorney General would have to present evidence that those magazines were used in public mass shootings, because the Court went mass shooting by mass shooting, saying, well, the possession ban wouldn't have prevented that shooting. The possession ban wouldn't have prevented that shooting. And that's not the burden of the Attorney General at this stage, but at the merits. The Attorney General can present evidence that large-capacity magazines are exceedingly dangerous. He has done so. And the Attorney General can show that there is an inference that these magazines, even if they are grandfathered and lawfully owned, and even if they haven't been used in any public mass shooting or murder of law enforcement, these magazines can be stolen. In 76 percent of public mass shootings, the guns and the firearm accessories were legally acquired. So even if they were owned legally, they can still be used in a public mass shooting. But also in many of the public mass shootings, the firearms were stolen. That was the case in the tragic Sandy Hook shooting. So there is an interest in making sure that even grandfathered large-capacity magazines are removed from circulation. But that's why the State of California, I take it, has gone further than the national rule. That's precisely the reason, Your Honor. And the Attorney General also submitted evidence with the declaration of Blake Graham that shows that California's existing large-capacity magazine restrictions were very difficult to enforce without a possession ban. And that's because unlike firearms, which bear unique serial numbers, large-capacity magazines don't. It's just very difficult for law enforcement, when they encounter these magazines, to determine that a magazine was properly grandfathered and wasn't improperly transferred, even if it was originally grandfathered. Do you want to move to the second real issue in the case, or do you want to have more argument as to the Second Amendment? Well, I would just like to note, because it was supposed to be my first point, and it will apparently be my last point on the Second Amendment, that every single court to have examined a large-capacity magazine ban, including four circuit courts, have uniformly concluded that even if they are protected by the Second Amendment, intermediate scrutiny applies, with the exception of the Second Circuit – Seventh Circuit, which applied to Gifford. I was going to say, what are you going to do with Seventh? Yeah. In Friedman, there was a different standard. But every other circuit and every other district court has applied intermediate scrutiny and has upheld magazine restrictions on substantially the same evidence that the Attorney General has presented here, and the district court abused its discretion in finding otherwise. But the problem that I have with that argument is that if it's an abuse of discretion, one can come down a different way looking at the same evidence. Every circuit in the country could come down differently, looking at the evidence differently, and on an abuse of discretion, that's all we're on here. So those arguments, they bear no weight with me. I understand, Your Honor. Maybe I'm happy it's my last point. But the district court did not examine a lot of the evidence that was submitted by the Attorney General, because the court concluded it had time constraints. So it could only look at one piece of empirical evidence. And it discounted all the expert reports, expert declarations that were submitted on baseless credibility findings. So, but again, I'm going to go right to the heart of the issue and be the devil's advocate here. The district court has in front of it a preliminary injunction. The district court sets a very ambitious and very, in our mind, an excellent schedule to get this thing off its calendar once and for good at the right standard. And until then, it says, I'm going to look at what evidence I have a chance to look at. I'm going to go through what I need to do. And I'm going to try to see if I can give it to you. But on this, I don't think I can. I'm going to leave it the way it is until I have the trial. And you're saying that's just wrong. On an abuse of discretion basis. Even though it's an abuse of discretion basis, the court does review de novo the legal determinations and the way that the court is characterized. What legal determination is there? We use the same cases. What? So the dis- All we're looking is at the evidence and how the cases apply to that evidence. That's not de novo review, that's abuse of discretion. The court does review de novo the court's characterization of California's possession ban as disarmament. This Court in FIOC concluded and agreed with the D.C. Circuit that a restriction on capacity size is not disarmament. People can have ten-round magazines. They can have as many ten-round magazines to protect themselves or their home. So the burden on any core Second Amendment right is very minimal. And the court characterized as disarmament and concluded that a ban on the possession of large-capacity magazines is a policy choice off the table under Heller. That is review de novo, and that is clear error. I see your argument. And with respect to the takings claim, because I do just want to address it briefly, there is no- Okay. You're running out of time. Very briefly, Your Honor. There is no takings violation. The State of California was exercising its police powers in banning dangerous magazines. This is not like Horn, where there was a physical appropriation of property. In this – with the large-capacity magazine ban and the possession ban, owners of grandfathered large-capacity magazines are not required to deliver their magazines to the government. They can modify them permanently under Penal Code Section 16740. That's a point that seems to be lost in all the briefing. They can maintain their magazines just so – just so long as they hold no more than ten rounds. As long as the modifiament is not a taking? Is that your argument? It would not be a per se physical taking, no, Your Honor. If anything, it would be a- Your argument. Is that the best? I will reserve the last ten seconds of my time. Thank you. Good morning, Your Honors, and may it please the Court, Erin Murphy, on behalf of the plaintiff at Belize. The district court did not abuse its discretion by granting a narrow preliminary injunction to preserve the status quo while the parties litigate the constitutionality of California's confiscatory possession ban. Subsections C and D of Penal Code 32310, which are the only provisions at issue in this interlocutory appeal, require law-abiding citizens to dispossess themselves of magazines that they lawfully acquired and have lawfully possessed for nearly two decades, if not longer. By enacting that confiscatory possession ban and eliminating that grandfathering clause, California made itself an extreme outlier, as even the other jurisdictions, the handful of them that do have magazine restrictions, have almost all included some form of grandfathering clause, as the Federal Government did and as California itself did for over 15 years. The district court didn't abuse its discretion in concluding that we were likely to succeed, at least on the record as the district court had before it at the time, on our claims that this is both a violation of the Second Amendment and a violation of the takings clause. And it didn't abuse its discretion in concluding that this was a really serious case of irreparable injury here, given that the point of these provisions, the only ones that were challenging in this posture, is to actually require dispossession, destruction of property, permanent modification of property, things that actually cannot be undone if this law were to go into effect before we can litigate our serious constitutional claims. If I could start by talking about the FIOC case, because obviously I understand that that's an important thing here. The first thing that's very critical to remember about that case is that it itself was a preliminary injunction appeal, and it itself was on abuse of discretion review. And the Court could not have made clearer that it was not ruling on the ultimate legal issues in that case. I mean, in the course of a 15-page opinion, the opinion uses the phrase abuse of discretion more than a dozen times and applies it to every single thing that the district court did in the case. Did it abuse its discretion by concluding that these were likely covered by the Second Amendment? Did it abuse its discretion by applying intermediate scrutiny? Did it abuse its discretion in making the determinations it did about this evidentiary record? And the obvious implication of abuse of discretion review when you're dealing with evidentiary determinations, credibility determinations, fact findings, is that it may well not be an abuse of discretion to come to a different conclusion, even based on the same evidence. Now … But if those are questions of fact, I agree with you, but in questions of law, you don't know if abuse of discretion or review has to be de novo. And the problem I have with it is it seems to me that the issue of whether there's intermediate attention to this is clearly a question of law, not one of fact. Well, I mean, two responses, Your Honor. First of all, the FIOC decision actually treated that as abuse of discretion question. It said the district court didn't abuse its discretion by concluding that intermediate scrutiny likely applied on the record before it. That said, I don't think this is really an issue, because the district court here did apply intermediate scrutiny. I mean, the Court spent, you know, after discussing why it wasn't sure that was actually the right standard, the Court said, but I'm going to apply that standard. That's what was applied in FIOC and that's what's been applied in most Ninth Circuit cases. So that's what I'm going to apply. And if you look at pages 20 and 21 of the Court's opinion, the decisions it relied upon for articulating intermediate scrutiny and then applying the reasonable fit test throughout its opinion were this Court's Second Amendment cases, Chauvin, Jackson, Bower, Sylvester. I mean, it took its language right from this Court's cases and applied the test this Court has set forth. But the district judge, the district judge in saying why it wasn't going to follow the same thing as Fayette said, they must have had a different record. Sure. And it was How was that proven, that they had a different record? Well, for one thing, we have a different record in this case. I mean, after the State and other jurisdictions have continued to put out basically the same evidence in every case, there are experts on the other side of this debate who said, we're going to subject that to real scrutiny and testing. You know, there's a lot of hypotheses being thrown around about how these laws might impact mass shootings, and we're going to study that. And in 2016, a year after the FIOC decision, our expert, Dr. Kleck, put out a study that took this seriously and said, I'm going to go look at all of these and I'm going to determine, do we even know what kind of magazines were used? Did it make any difference the way that they were used? Is there any factual basis to substantiate this? What did the district court do with that particular study? Well, what the district court did was, with respect to the evidence that the State pointed the court to, the mayor's report, which I would note, while the State wants to kind of fault the district court for so focusing on that, that's the attention that the State told the district court, this is our evidence. And the district court took care of it. But as you pointed out, that the — he said the evidence submitted in FIOC was different from the evidence he has. What he said — What is the basis of that finding? Sure. I mean, I think that what he basically did was take what has been developed since then in terms of means of testing the — actually looking at the State's evidence and determining whether the State has drawn reasonable inferences based on a substantial evidence, which the State itself concedes at page 33 of its brief, is the test that applies here. And he said, you know, I'm going to look at this. I'm going to look at what you put forward. And it may be the same study that was put forward in FIOC, but FIOC was an abusive discretion case, and the Court said in FIOC, we are not reweighing credibility determinations and making our own discretionary fact findings because we're in abusive discretion posture. Where did the district court say that? I didn't see that when I read the district court's opinion. Where did the district court say? What you just said the district court said. That FIOC didn't — that the district court — that it has the discretion to conclude otherwise? I mean, I think that's what the court was saying when the court said, you know, they made credibility determinations there, and I don't find the record before me credible. Page. The language about not finding it credible, that would be — No. I want his analysis specifically of why he said FIOC — I'm not going to follow FIOC. Sure. Because there were differences between the record I have and the record FIOC has. What the district court said is the district court in FIOC had before it an evidentiary and essential record that was credible, reliable, and on point. The district court here looked at that evidence. Where are you reading from? That is on pages 22, 23 of the district court's opinion. And then the district court looked at the evidence before it, some of which I will agree was the same evidence, and said, you know, I get to decide if I think it's credible and reliable evidence. Because that is what this court — No, no, no. He didn't say that. He said maybe FIOC had a different record. He didn't say it had the same record. He said maybe they had a different record from what's before me. Sure. And with all due respect, I mean, I don't think the district court was bound to examine whether the record was the same as in FIOC, because this court didn't hold in FIOC. I'm not saying he didn't. I'm saying this is what he said he did. Sure. I'm not saying he had to. I mean, I take him to be saying, look, you know, maybe it was different, maybe it wasn't. The point is, I have a record before me, and I'm looking at that record. I'm not bound to rule in the State's favor by FIOC, because that was an abuse of discretion preliminary injunction case. So my obligation is to determine whether the record before me is the record where I find that the State is credible and reliable. And this court certainly did not hold in FIOC that courts were bound to conclude that the record before the FIOC court was credible and reliable. I mean, to the contrary, this court specifically said that it would not reweigh the evidence and reconsider the credibility determinations. I understand all that. My point is that I don't understand where the judge said, the district judge said, there's a different record in FIOC, so therefore I'm going a different ‑‑ I can go a different direction. I just don't understand the statement. I mean, he said that the record was different. As he said, they had a different record than I had before me. Must have had a different record. And it is a different record, because we submitted evidence that postdates the FIOC case. So I don't think you can find that the district court erred by stating something that is, as a factual matter, true. I mean, the evidence we submitted in support of our case to demonstrate that the State's evidence is not actually based in substantial evidence and not based on reasonable inferences that doesn't satisfy intermediate scrutiny, which, by the way, intermediate scrutiny plainly does put the burden on the government to prove that a law is constitutional. It may not be as high of a burden as strict scrutiny, but that's the whole point of intermediate scrutiny. I think based on, you know, that record, the district court was saying, this is my obligation. This issue is not answered. I have a record before me, and I need to look at that record and make my own determination. A preliminary determination, he said at least four times in his opinion, this is a preliminary determination. He focused on the particular evidence that the State brought to his attention during the ---- The new evidence, the new doctor. The mayor's report is what the State focused on. Yeah. The mayor's report, I mean, if you go look at the transcript of the preliminary injunction hearing, that's the only report they brought to his attention when he asked about statistics about mass shootings. So I hardly think they can fault the district court for saying, well, if you told me that's your best evidence, that's the evidence I'm going to look the most carefully at. I mean, you know, I appreciate that the State put forward a lot of evidence here, but it's a lot to ask a district court to, in a preliminary injunction posture, you know, review in excruciating detail 3,300 pages or whatever it was that they put forward. And then particularly when their position is that, you know, the district court's actually not allowed to look at the evidence at all and is bound to just accept what they say and defer to it no matter what. I mean, that's not the standard clearly under intermediate scrutiny. Let me change the flavor just a little bit. It seems to me that California, by their briefing, has admitted that if 32310C and D don't violate the constitutional rights, or violate, sorry, if they violate the plaintiff's rights, that the latter three elements of the preliminary injunction would be met. Would you agree with that? I think so. I mean, I guess it's a better question for them than for me. I'm just trying to understand, because there's not much argument made on the other three elements of the preliminary injunction, and I'm not going to take up your time by asking you questions about that if you're agreeing with that. Yeah, no, I think both parties are looking at this as a case in which, you know, much of the question about the remaining factors depends a lot on whether you think there's constitutional rights at stake here or not. That said, I mean, I do think that there is a concrete irreparable harm here in a way that may differentiate it a bit from some other cases, given that we're dealing with a dispossession statute where the government's saying, you know, we want to destroy your property or force you to physically alter it or give it away in a way where you may never get it back. It seems to me that you're going to where I want to go, so I want to leave the Second Amendment. Sure. And you've heard what a counsel says in his argument. He only took a couple of minutes at the end. He didn't think that was evidently where he really wanted to go. But why don't you talk to us about why the district court was correct in its determination as to the taking argument? Absolutely, Your Honor. So I think the first problem with what I take the State's principal argument to be here is that there just is no police power exception to the takings clause. That's the law of this circuit. It's the law of the Supreme Court. It's very clear that the State, even in the context where a State is invoking the police power to protect the public rather than for a public benefit, it still must pay compensation. If you look back in particular at the 1992 Lucas case from the Supreme Court, this is exactly the distinction that the Court rejected. The Court confronted its cases about noxious use and nuisances and kind of things that are designed to protect the public from harm and said that's not a relevant distinction under the takings clause. What matters under the takings clause is whether the government is physically occupying your real property or taking possession or forcing you to give up possession of your personal property. But the government argues, and the State just argued, you don't give up your possession at all. All you've got to do is change it. Yeah, and that's an argument that the Supreme Court squarely rejected as recently as the Horn case when the federal government said, well, if they don't want to turn over their raisins, they should take their grapes and make wine. And the Supreme Court said, you know, let them make wine has never been a very effective argument and it isn't here either. And it pointed back to the Loretto case where it had rejected the argument that if the rental building owner didn't want the cable box on her roof, she should stop renting out her property. And what the court said in both cases is property rights just aren't that, you know, manipulable and if you're really saying you have to permanently, I mean, the word in the statute here is permanently alter the property so that it is no longer what it was that you purchased it as. The court rejected the notion that the existence of that option is sufficient to eliminate the taking. And I think it's particularly notable that the court did so in Loretto and Horn because those are both per se takings cases. So even with those options on the table, the court didn't say, you know, well, that's not enough to eliminate it but it's enough to put us in regulatory takings land. It said that's not enough to eliminate even the per se taking. It is still a physical per se taking to say take your grapes and don't make raisins. So I don't think the argument is any more persuasive here and, you know, I don't really think that there's any authority for this proposition. Is there any evidence in the record that possession of banned magazines was ever illegal? Was ever illegal, like, at the time that these were obtained? Yes. I don't think it was ever, I mean, in California it wasn't illegal until 2000. And the federal ban was in place in 1994 but it had a grandfather clause. So it was never illegal in California, to my knowledge, before 2000 and it wasn't illegal as a matter of Federal law ever as to people who had a grandfathering, you know, who would have qualified for a grandfathering clause, which is the only people we're talking about for purposes of this appeal, because we only sought our preliminary injunction, you know, as applied to the taking of magazines from people who lawfully obtained them before it was illegal to do so and have lawfully possessed them ever since. Do you agree that Section 2, was it 323 blah blah, is not a physical taking? No, no, we believe it is a physical taking. Yeah. Yes. Why do you, why the, your opposition contends it's not a physical, how is it a physical taking, number one, and number two, why doesn't it, why isn't it a fair interpretation of police power that they can do so without it being a confiscation? Sure. So, so first, it's a physical taking because it's a, it's a dispossession. I mean, the one option that is not available under this statute is continuing to possess your property. There are options to give it to a third party, but the Supreme Court made very clear in Kelo and the Hawaii Authority case before it and a whole number of cases, it doesn't matter if you have to surrender your property to a third party instead of the government, it's still a taking if you can no longer physically possess your property. And under this statute, within the confines of the state of California, there is no way for my clients to continue to physically possess their property unless they essentially destroy it and convert it into some sort of completely different property. So we do think this is a physical takings case. And there is no police power exception. I mean, the cases that they rely upon are really criminal and civil forfeiture cases. And the civil and criminal forfeiture cases rely on a very different theory. The basic, you know, what's going on in forfeiture cases is either what you possess, it was contraband when you obtained it. You know, I mean, if someone illegally buys something today that is, that they know is contraband, they don't have a reasonable expectation in possessing it. And of course, the government can confiscate that contraband for them, from them. The other context in which civil forfeiture and criminal forfeiture law applies is if property was used in the commission of a crime. And that's, again, not the government's theory here. They're not confiscating. I mean, to the contrary, they're confiscating these even though they haven't been used in a crime. They're saying, we know this law is going to apply to people that lawfully possess them and have long lawfully possessed them, but we're taking them anyway because we're overnight declaring what was lawful yesterday to be contraband today. Wouldn't that be true, wouldn't that be true of any new law that would in any way interfere with the possession of weapons? I mean, that's why if you look at the Federal laws, I assume the machine gun ban and the assault weapons ban both had grandfathering clauses, and why most of these weapon laws throughout the country have grandfathering clauses. I don't think that's kind of just out of the goodness of the hearts of all of these legislatures, they have all understood, as California itself did for 15 years, that there's a takings problem. When you take property that was lawful as a matter of your own law to acquire and just decide the next day, we're going to declare it contraband. And I think it's a really slippery slope to accept the proposition that the state can just declare anything that it thinks is, you know, harmful to public and health and from the people, even if they lawfully obtained it yesterday. Because you can think of all manner of things, well outside the context of Second Amendment rights and firearms, that the state could deem to be harmful to the people. And that's why in Lucas, the Supreme Court squarely rejected the argument that the takings clause doesn't apply so long as the government says, oh, we're protecting against a harm instead of providing some sort of benefit to the public. It said what matters is if you're taking the property and here that is what you're doing. And so in this case, I think that applies with full force and at least applies with enough force that at the preliminary injunction stage, the Court clearly didn't abuse its discretion by saying, you know, we're not going to require you to surrender your property for destruction or require you to permanently physically alter it before we can even litigate this very serious constitutional concern. If there's no further questions, I ask the Court to affirm. Thank you very much. Okay, I'll try to be fair. I'll give you a minute. Thank you, Your Honor. I appreciate it. I mean, she didn't use all her time, so I'm really leaning over. I appreciate it, Your Honor. I'd just like to address two very quick points. On the takings claim, my colleague stated that if the state was exercising its police power, if there is no police power exception, then just compensation must be paid to the owners of these large capacity magazines. Just compensation is a legal remedy. Where there is a legal remedy available, an equitable remedy will not issue. And that's exactly what the Eastern District of California ruled in part in the Weiss v. Becerra case, in which a preliminary injunction motion was denied from in a substantially similar case. On an abuse of discretion. Understood, Your Honor. But where there is a remedy for a takings violation, that is just compensation. I guess all I'm trying to do is I'm trying to get you to focus. Everybody's up here making an argument that they think is good to a jury that we should buy. But the bottom line is, I cannot do that. I can't get my argument to be something I think the jury's going to buy. I've got to say what the District Court did was illogical. It was out of bounds in what happened here. And as it goes to taking, I'm afraid Lucas is your biggest problem you've got. So Lucas was a case involving real property. I know that. And as Horne made clear, Horne did extend the per se physical takings rule to apply to private possessions. But it made clear that with respect to personal property, regulatory takings, regulations can diminish the value in personal property. It can reduce and restrict the use of property. All discretionary decisions which a district court can easily make. Well, these are matters of law, Your Honor. I understand your argument. Thank you. Thank you, Your Honor. Your time has expired. I'd like to have him finish his sentence, please. Okay. Finish your sentence. Finish your sentence. My last sentence is that the district court's order should be reversed and the preliminary injunction be vacated. Thank you, Your Honors. That's what I thought he was going to say. All right. Thank you very much. Thank you. Case 1756081, Duncan v. Becerra is submitted. Thank you both for your good arguments. We appreciate them both. And the court is in recess for today.
judges: Wallace, N.R. Smith, Batts